# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ZIEBART INTERNATIONAL CORPORATION,
a Michigan corporation, ZIEBART
CORPORATION, a Michigan corporation

      Plaintiffs,

                                     Case No.
vs.                                 Hon.

WAGGONER ENTERPRISES, INC, a Minnesota corporation
and JAMES C. WAGGONER, JR., an individual,
jointly and severally

      Defendants.
_____/

## VERIFIED COMPLAINT

NOW COME Plaintiffs, ZIEBART INTERNATIONAL CORPORATION, a Michigan corporation ("International"), and ZIEBART CORPORATION, a Michigan corporation ("Ziebart") (in the aggregate International and Ziebart will be referred to as "Plaintiffs"), and for their Verified Complaint against Defendants WAGGONER ENTERPRISES, INC., a Minnesota Corporation ("Defendant Corporation") and JAMES C. WAGGONER, JR. ("Defendant Waggoner"), an individual, jointly and severally, (in the aggregate Defendant Corporation and Defendant Waggoner will be referred to as "Defendants"), state as follows:

### Jurisdictional Statement

1.      Subject matter jurisdiction in this case is based on 28 U.S.C. §1331, 28 U.S.C. §§1338 and 1367, because: (a) the claims arise under the federal Lanham Act, 15 U.S.C. §1051, *et. seq.,* i.e. the claims seek declaratory and injunctive relief and monetary damages for infringement of the Plaintiffs' federally registered trademarks and for trademark unfair competition, or (b) the

claims are so related to the above-referenced claims that they form part of the same case or controversy.

## Venue

2.      Venue is based upon 28 U.S.C. §1391(b) and is proper in this District because this is a civil action wherein jurisdiction is not founded solely upon diversity of citizenship and a substantial part of the property that is the subject of the action is situated in this District.

## General Allegations

3.      Plaintiff International is a Michigan corporation with its principal place of business in Troy, Michigan.  International is engaged in licensing, pursuant to written licensing agreements, the use of its distinctive Ziebart® name, TidyCar name and other registered trademarks and distinctive processes developed by Plaintiffs for use in providing products and services for the protection and maintenance of automobiles and trucks, and providing accessories to enhance their use.  Plaintiffs use valuable secret processes, methods, equipment, products and materials to perform the services utilized in their business.

4.      Plaintiff Ziebart is a Michigan corporation with its principal place of business in Troy, Michigan.  Ziebart is a wholly-owned subsidiary of International.  Ziebart is the exclusive licensee in the continental United States for the use of International's registered trademarks, trade name, logos and trade materials for use in providing products and services for the protection and maintenance of automobiles and trucks and providing accessories to enhance their use.  Pursuant to the terms of its agreement with International, Ziebart licenses in the United States the use of

2

International's Ziebart® name and other registered trademarks, secret trade processes, methods, equipment, products, and materials developed for the protection and maintenance of automobiles and trucks.

5.      Defendant Corporation is a corporate citizen of the State of Minnesota and operates a vehicle care service business at 635 Franklin Ave., NE, St. Cloud, MN 56304.

6.      Upon information and belief, Defendant Waggoner is a resident of Stearns County, MN and is the president and principal of Defendant Corporation.

7.      International is the owner of the following trademarks and service marks, among others, registered in the United States Patent and Trademark Office, pursuant to 15 U.S.C. §§1051, 1053 and 1901:

| NAME | REGISTRATION NUMBER | DATE OF REGISTRATION |
|------|---------------------|----------------------|
| ZIEBART® | 1,125,370 | 09/25/79 |
| ZIEBART® | 1,439,097 | 05/12/87 |
| ZIEBART HELMET & SHIELD DEVICE® | 872,779 | 07/08/69 |
| ZIEBART SHIELD DESIGN® | 1,125,283 | 09/25/79 |
| FORMULA Z® | 1197581 | 06/15/82 |
| HELMET & SHIELD DEVICE® | 1,304,504 | 11/13/84 |
| ZIEBART HELMET & SHIELD DESIGN® | 1,225,374 | 01/25/83 |
| HELMET & SHIELD DESIGN® (lined for color) | 1,235,567 | 04/26/83 |
| ZIEBART HELMET & SHIELD DESIGN® | 1,586,399 | 03/13/90 |
| PROTECT-A-SHINE® | 1,663,650 | 11/05/91 |
| ZIEBART TIDY CAR AND DESIGN® | 1,799,658 | 10/19/93 |
| RENU-A-SHINE® | 1,669,746 | 12/24/91 |
| GOLDCARE® | 1,718,752 | 09/22/92 |
| IT'S US. OR RUST® | 997,168 | 10/29/74 |
| TIDY CAR® | 1,234,187 | 04/12/83 |
| INNER-GUARD® | 1,940,066 | 12/05/95 |
| INNER-CLEAN® | 1,982,135 | 06/25/96 |
| PRESERV-A-SHINE® | 1,233,155 | 04/05/83 |

3

| | | |
|---|---|---|
| TIDY CAR Design® (man in car) | 1,191,005 | 03/02/82 |
| ZEEGARD® | 1,115,089 | 03/20/79 |
| ZIEBART GOLD SHIELD PREFERRED CUSTOMER & DESIGN® | 1,497,072 | 07/19/88 |
| ARTECH® | 1,915,448 | 08/29/95 |
| Z-LINER® | 2,248,258 | 05/25/99 |
| Z-SHIELD® | 2,327,348 | 03/07/00 |
| DIAMOND GLOSS® | 2,544,054 | 03/05/02 |
| ZIEBART THAT'S SMART® | 3,185,265 | 12/19/06 |

8.     For decades International and Ziebart have licensed dealers worldwide to use International's trademarks, trade names and logos for the retail sale of distinctive Ziebart® brand automobile and truck products and services. International and Ziebart  have made substantial efforts to control the nature and quality of business conducted and goods and services offered under the trademarks and trade dress.  The trademarks and trade dress have acquired an excellent reputation within the trade, and the public has come to recognize that those who use the trademarks and trade dress sell quality services and products exclusively within the Ziebart business system.

9.     Plaintiff Ziebart licenses, through written licensing agreements, the use of International's Ziebart® name and other registered trademarks and processes to Ziebart® licensed dealers throughout the United States in exchange for the payment of royalties, advertising fees and other fees described in the license agreements.  The licensed dealers provide products and services to their customers for the protection and maintenance of vehicles.

10.     To the general public, the name Ziebart® and other registered trademarks licensed to Ziebart by International have come to mean an establishment sponsored, approved and/or

4

authorized by International and/or Ziebart.  Plaintiffs presently have ninety-nine (99) company-owned and licensed business locations in the United States, with an additional Two Hundred Sixty-Three (263) outside of the United States.

11.     On or about July 15, 1997, Ziebart executed a Ziebart license agreement and related documents with Defendant Corporation authorizing it to advertise and sell Ziebart products and services ("License Agreement") (See Exhibit A attached).

12.     In conjunction with the License Agreement, Defendant Waggoner signed a Continuing Guarantee, promising to be personally liable for any and all indebtedness owed by the licensed business to Ziebart.  (See Exhibit B attached)

13.     Ziebart entered into an agreement with Speedy Auto Glass Franchising Systems, Inc. on October 1, 1998, which agreement authorized Ziebart and its licensees to offer for sale and sell Speedy Auto Glass products and services.

14.     Ziebart entered into an agreement with Rhino Linings USA, Inc., now known as Rhino Linings Corporation on March 13, 1999, which agreement authorized Ziebart and its licensees to offer for sale and sell Rhino Linings products and services.

15.     Under the License Agreement, Defendant Corporation had the right to use the Ziebart trademarks, trade names and logos in connection with the advertising, offering for sale and sale of products and services for the protection and maintenance of automobiles and trucks as a Ziebart licensee at 635 Franklin Ave., NE, St. Cloud, Minnesota (sometimes referred to as the "Licensed Location").

5

16.     On June 3, 1999, Defendant Corporation executed an Addendum to the License Agreement with Ziebart, Exhibit C attached, which granted Defendant Corporation a limited exclusive right to sell and apply Rhino Coatings for Retail Automotive Applications at its Licensed Location ("Rhino Addendum") and to display the Rhino trademarks within the licensed territory in connection with the sale of those services and products.

17.     On March 28, 2000, Defendant Corporation executed with Ziebart an Addendum that permitted Defendant Corporation to operate a Speedy Auto Glass business at the Licensed Location, Exhibit D attached, enabling Defendant Corporation the right to use Speedy trademarks ("Speedy Addendum") and the Speedy Auto Glass system in a co-branded business with Ziebart.

18.     The License Agreement ran for a term of 10 years, and continued to operate on a month-to-month basis after July 15, 2007 until it terminated on August 31, 2011.  The Speedy Addendum and the Rhino Linings Addendum terminated simultaneously with the License Agreement per the terms of the respective addenda.

19.     During the course of Defendant Corporation's operation of its Ziebart Licensed Location, Ziebart requested Defendants to provide business records and books so that Ziebart could perform audits of Defendant Corporation's business, as was Ziebart's right per Sections 4(J) and 6 of the License Agreement.

20.     Despite Ziebart's request that Defendant Corporation provide its financial statements, bank statements and copies of income tax returns for the years 2008, 2009 and 2010, Defendant Corporation failed and refused to provide these business records.

6

21.     On June 2, 2011, Ziebart sent a letter, certified mail, to Defendants giving Defendants notice that Defendant Corporation was in violation of Section 15.A of the License Agreement for failing to comply with repeated requests to make its financial statements, bank statements and copies of its 2008, 2009 and 2010 tax returns available to Ziebart for audit. (Exhibit E, attached.)

22.     Per the June 2, 2011 letter, Exhibit E, Ziebart gave Defendant Corporation ninety (90) days notice to provide the business records requested, and informed Defendants that if the business records were not provided as required, the License Agreement would automatically terminate, effective August 31, 2011.

23.     The letter also gave Defendants notice that Defendant Corporation would be responsible for fulfilling all of the post-term License Agreement obligations if termination occurred, including the following obligations:

a)      payment of all outstanding amounts owed Ziebart;

b)      returning "[a]ll exterior sign faces, menu boards and banners bearing any of the licensed trademarks or logos, including Speedy Auto Glass and Rhino Linings" signage;

c)      returning "[a]ll proprietary décor items from the interior of the premises, including, but not limited to displays, menu boards, header panels and signage";

d)      returning "[a]ll proprietary items bearing the licensed trademarks, including, but not limited to tools, posters, brochures, invoices, warranties, telephone tracker, sales aids, ad kit, technical manuals and instructions, catalogs and forms";

e)      returning "[a]ll components of the BART software system, including customer lists"; and

f)      returning "[a]ll chemical products bearing the licensed trademarks, which are not more than twelve months old and which are in re-saleable condition."

7

24.    Defendants failed to respond to the June 2, 2011 letter and failed to provide any of the business records requested.

25.    On September 1, 2011, Ziebart sent Defendants another letter via certified mail (Exhibit F attached) giving them notice that the License Agreement had terminated because Defendants defaulted on their License Agreement obligations described in the June 2, 2011 letter. The September 1, 2011 letter described in detail Defendant Corporation's post-term License Agreement obligations, including the obligation to remove, at Defendants' expense, all exterior signage reflecting Ziebart's trademarks (i.e. Ziebart and TidyCar trademarks), and Speedy Auto Glass and Rhino Linings trademarks.

26.    Per the September 1, 2011 letter, Defendant Corporation was to immediately cease using any of the Ziebart, TidyCar, Speedy Auto Glass and Rhino Linings trademarks and logos, and the licensed Ziebart trade dress and business operating system.

27.    Defendants did not respond to Ziebart's September 1, 2011 letter, although Defendants did stop paying royalties and all other fees that had been required under the License Agreement.

28.    On October 28, 2011 and November 11, 2011, Ziebart's legal counsel sent letters via certified mail to Defendants giving Defendants notice, once again, of their post-term License Agreement obligations (Exhibits G and H attached), but Defendants did not respond to these letters.

29.    At some point after November 11, 2011, Ziebart came to understand that the Defendant Corporation's business closed for failure to pay taxes, but recently learned, upon

8

information and belief, that the property upon which Defendant Corporation's business operates was re-conveyed to an entity controlled by Defendants known as "Ziebart of St. Cloud." (Exhibit I attached)

30.  Defendants' vehicle care business is operating again at the same location displaying Ziebart, TidyCar, Speedy Auto Glass and Rhino Linings signage in violation of the License Agreement. (Exhibit J attached, photographs of outside of the Licensed Location)

31.  Defendants also continue to advertise their vehicle care business at their former Licensed Location on the internet as Ziebart, Speedy Auto Glass and Rhino Linings in violation of the License Agreement and the Speedy and Rhino Linings Addenda. (See Exhibit K attached)

32.  Since the termination of Defendant Corporation's License Agreement and to the present, Defendant Corporation has continued to operate virtually the same business displaying the Ziebart®, TidyCar®, Speedy Auto Glass and Rhino Linings trademarks at their former Licensed Location. (See Exhibit J)

33.  Upon information and belief, Defendants are answering the telephone at their vehicle care business identifying it as "Z-Tech" and issuing invoices with the name "Z-Tech", while using the name "ziebart" in their email address and "rhinolinings" in their website domain name. (see Exhibit L attached), causing great confusion among the consuming public.

34.  In line with Section 17.B of the License Agreement, termination of the License Agreement does not lessen Defendants' obligation to be financially responsible for the warranties Defendant Corporation issued to its Ziebart customers during the time period Defendant

9

Corporation was an authorized Ziebart licensee. Customers of a former Ziebart licensee are to be referred to an authorized Ziebart licensee when such customer seeks warranty work. A former licensee's validation of a "Ziebart Warranty" after the licensee's termination, including Defendant Corporation's validation of such warranties, invalidates Plaintiffs' responsibility with respect to these warranties. Pursuant to Ziebart policy, these customers are referred back to the former Ziebart licensee who invalidated the warranties.

## COUNT I

## DECLARATORY JUDGMENT

35.     Ziebart incorporates the allegations in paragraphs 1-34 as if fully set forth herein.

36.     Pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57, this Court may declare the rights and other legal relations of any interested party seeking such declaration.

37.     Pursuant to Section 15.A.8 of the License Agreement (Exhibit A attached), the License Agreement can be terminated if Defendant Corporation fails to make business records and books available to Ziebart or its authorized representatives for audit purposes.

38.     Pursuant to the Rhino Linings Addendum, Exhibit C, Section 9.A, a material breach of the License Agreement constitutes a default under the Rhino Linings Addendum, permitting its termination.

39.     Pursuant to the Speedy Auto Glass Addendum, Exhibit D, Section 13.A, a material breach of the License Agreement constitutes a default under the Speedy Auto Glass Addendum, permitting its termination.

40.    Under Minnesota Statute 80C.14.(3) and the License Agreement (Section 16A), Ziebart was required to provide Defendant Corporation with at least ninety (90) days advanced written notice of termination of the License Agreement.

41.    On June 2, 2011, Ziebart sent Defendants notice via certified mail that Defendant Corporation was in violation of the License Agreement for refusing to make business records and books available to Ziebart for audit purposes for the years 2008, 2009 and 2010, and that unless Defendants cured the violation within ninety (90) days, the License Agreement would terminate automatically, and, among other things, Defendants would be required to cease using exterior signs bearing Plaintiff's trademarks (which include the Ziebart and TidyCar trademarks), and Speedy Auto Glass and Rhino Linings trademarks.

42.    Defendants did not respond to the June 2, 2011 letter.

43.    On September 1, 2011, Ziebart sent Defendants notice via certified mail that the License Agreement was terminated, because Defendants failed to cure the violation identified in the June 2, 2011 letter and, among other things, Defendants were required to cease using the exterior business signs bearing Plaintiff's trademarks (which include the Ziebart and TidyCar trademarks), and Speedy Auto Glass and Rhino Linings trademarks.

44.    Defendants ceased making royalty payments or any other payments owed under the License Agreement after September 1, 2011.

45.    Defendants did not respond to Ziebart's September 1, 2011 letter and did not respond to 2 other letters sent via certified mail by Plaintiff's attorney on October 28, 2011 and

11

November 11, 2011 regarding the same subject matter.

46.     Pursuant to the terms of the License Agreement, Section 16.A, and in line with Minnesota Statute 80C.14.(3), the License Agreement, with attached Addenda (Exhibits C and D), terminated effective 90 days after the notice (as of September 1, 2011).

WHEREFORE, Ziebart hereby requests that this Court render its declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, and F.R.C.P. 57 that the License Agreement, with attached Addenda, terminated effective September 1, 2011, and further that the Defendants have no further rights under the License Agreement and/or any Addenda attached thereto.

## COUNT II

## FEDERAL AND COMMON LAW TRADEMARK INFRINGEMENT

47.     Plaintiffs incorporate the allegations in paragraphs 1-46 as if fully set forth herein.

48.     Despite Ziebart's termination of the License Agreement, Defendants have illegally and wrongfully continued to operate a vehicle care business at 635 Franklin Ave., St. Cloud, MN 56304 using Plaintiffs' federally registered Ziebart® and TidyCar® trademarks without authorization and in violation of the License Agreement (Exhibit A) and Addenda (Exhibits C and D) attached to it.

49.     Defendants' have also infringed upon Plaintiffs' trademarks by using the Ziebart® - advertised telephone numbers, namely: (320) 255-1156, (320) 281-4340, (320) 257-0020 and facsimile number (320) 259-9348, to promote Defendants' vehicle care business located at 635 Franklin Ave., NE., St. Cloud, MN 56304. (See Exhibit K attached)

12

50.     These illegal and wrongful actions constitute the unlawful infringement of and use in commerce of Plaintiffs' federally registered trademarks in connection with the sale, offering for sale, distribution and advertising of goods and services, in violation of federal law, 15 U.S.C. §1114(a) and (b) and have and will continue to cause actual confusion as to the relationship between Plaintiffs and Defendants' renegade vehicle care business.

51.     The above-referenced wrongful and illegal acts also constitute infringement of Plaintiffs' common law trademark rights and will continue to cause actual confusion between Plaintiffs and Defendants' renegade vehicle care business that continues to operate using Plaintiffs' trademarks in conjunction with telephone numbers advertising Defendants' renegade vehicle care business.

52.     Defendants' infringing conduct has caused and is continuing to cause irreparable injury to the reputation and goodwill of the Plaintiffs in the use of Plaintiffs' trademarks, which reputation and goodwill were established at great labor and expense. There is no adequate remedy at law to protect Plaintiffs' interest, unless Defendants' use of the trademarks is immediately stopped.

53.     Defendants have made profits from the on-going infringing use of Plaintiffs' trademarks and Plaintiffs have suffered substantial damage thereby. The extent of the profits and damage are unknown to Plaintiffs without a complete accounting of Defendants' gains and profits.

54.     Plaintiffs have been and continue to be injured and damaged by Defendants' unlawful infringing acts. Such additional injury and damages include, without limitation: injury to

13

Plaintiffs' goodwill and reputation and Plaintiffs' trademarks, and will also include substantial expenses, including attorney's fees in connection with this action and additional amounts that have not yet been fully determined.

WHEREFORE, Plaintiff prays for relief as follows:

A.     That this Court grant the following equitable relief:

(1)    That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them, be preliminarily and permanently enjoined from using in the advertising, offering for sale and sale of vehicle care services and products offered for sale and sold by Plaintiffs and all products and services of a similar nature to those offered by Plaintiffs or their licensees, with the designation Ziebart® and TidyCar® or any other of Plaintiffs' trademarks or logos or any word or words confusingly similar to these service marks or the other marks listed in Paragraph 7 of this Verified Complaint at Defendants' business located 635 Franklin Ave., NE., St. Cloud, MN or any other place of business owned and/or operated by any of the Defendants, without an express written license from Plaintiffs.

(2)    That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them be required to transfer to Plaintiffs forthwith the Ziebart®-advertised telephone numbers namely: (320) 255-1156, (320) 281-4340, (320) 257-0020 and facsimile number (320) 259-9348.

(3)    That all tools, technical, marketing and other manuals, copyrighted materials, sign faces,

14

advertising and promotional materials and any other items bearing any licensed trade name, trademark or logo, BART software and other materials of a confidential, proprietary and/or trade secret nature in the possession, custody, or control of Defendants, their agents, servants, employees, representatives and all those persons who act in concert or participation with them, and each and all of them, which might, if used, violate the injunction herein requested, be immediately returned to Ziebart, at Defendants' expense per Section 14 of the License Agreement, and that Defendants pay Ziebart's attorney's fees and other costs and expenses as authorized by Section 14 of the License Agreement.

(4)    That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them be enjoined for a period of 2 years from operating a business similar to the licensed business within a radius of five (5) miles from the Licensed Location per Section 14 of the License Agreement.

(5)    That Defendants, on behalf of their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, account to Ziebart for all gains and profits Defendants, their agents, servants, licensees, employees and representatives, and all those persons who act in concert or participation with them have derived and continue to derive by the aforementioned acts of service mark infringement and unfair competition as alleged herein, trebled pursuant to 15 U.S.C. §1117 and common law.

(6)     That, pursuant to 15 U.S.C. §1116, Defendants be directed to file with the Court and serve on Plaintiffs' counsel within thirty (30) days after service of such injunction upon Defendants a report in writing setting forth in detail the manner and form which Defendants have complied with said injunction.

B.     The Court award the following relief and money damages for trademark infringement:

(1)     That Defendants be required to pay damages, trebled, as allowed by federal trademark law, to Ziebart in consequence of the aforementioned willful and deliberate acts of trademark infringement.

(2)     That Defendants be required to pay to Plaintiffs damages in consequence of Defendants' aforementioned acts that cause injury to Plaintiffs' goodwill and reputation and Ziebart's lost sales.

C.     That this Court render its declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure that the License Agreement is terminated, that Defendants have no further rights under it, including its addenda, and that Ziebart may exercise all rights granted to it by the License Agreement upon termination.

D.     That Plaintiffs be granted statutory interest on their damages as provided by law.

E.     That Plaintiffs be granted all other just, proper and equitable relief as this Court may determine.

F.     That Plaintiffs be awarded its reasonable attorneys' fees, costs of this action and expenses in connection herewith pursuant to 15 U.S.C. §1117 and be awarded to Ziebart as authorized by

16

Section 14 of the License Agreement.

**COUNT III**

**FEDERAL AND COMMON LAW TRADEMARK UNFAIR COMPETITION**

55.     Plaintiffs incorporate the allegations in paragraphs 1-54 as if fully set forth herein.

56.     Despite the termination of the License Agreement, Defendants have unfairly competed against Ziebart by continuing to advertise and operate their vehicle care services business at 635 Franklin Ave., NE, St. Cloud, MN 56304 using the Ziebart® and TidyCar® federal trademarks, thereby competing unfairly with Plaintiffs' trademarks in violation of federal law.

57.     Defendants' have also unfairly competed by using the Ziebart - advertised telephone numbers, namely: (320) 255-1156, (320) 281-4340, (320) 257-0020 and facsimile number (320) 259-9348, to promote Defendants' vehicle care services business at 635 Franklin Ave., NE, St. Cloud, MN 56304.  This unfair competition has caused and will continue to cause actual confusion among consumers regarding the affiliation of Defendants' renegade vehicle care service business with Ziebart's licensees.

58.     Defendants' unfair and illegal conduct constitutes a fraud and deception on the citizens of the State of Minnesota and other individuals throughout the United States who come in contact with Defendants' vehicle care business.  The natural and probable tendency of Defendants' acts is to deceive the public and pass off their goods and services as those of Ziebart, to the detriment of Ziebart and cause Ziebart to lose sales and to otherwise irreparably injure it and its reputation.

17

59.     Defendants' on-going unfair competition after termination of the License Agreement constitutes Defendants' knowing use of false designations of origin and false descriptions and representations of goods and services used in commerce, in violation of federal law, 15 U.S.C. §1125(a).

60.     Defendants' continued trademark violations also constitute common law unfair competition violating Plaintiffs' common law rights in the Ziebart trademarks.

61.     Defendants' conduct has caused and is continuing to cause irreparable injury to the reputation and goodwill of Plaintiffs in the use of Plaintiffs' trademarks, which reputation and goodwill were established at great labor and expense.   There is no adequate remedy at law to protect Plaintiffs' interest, unless Defendants' use of Plaintiffs' trademarks is immediately stopped.

62.     Defendants have made profits from the infringing uses and from the acts of unfair competition and Plaintiffs have suffered damage thereby.  The extent of the profits and damage are unknown to Plaintiffs without a complete accounting of Defendants' gains and profits.

63.     Plaintiffs have been and continue to be injured and damaged by Defendants' unlawful acts.   Such additional injury and damage include, without limitation: injury to Plaintiffs' goodwill and reputation, including injury to the goodwill and reputation of Plaintiff's trademarks, and also includes substantial expenses, including attorney's fees in connection with this action, and additional amounts yet to be determined.

WHEREFORE, Plaintiff prays for relief as follows:

A.     That this Court grant the following equitable relief:

(1) That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them, be preliminarily and permanently enjoined from using in the advertising, offering for sale and sale of vehicle care services and products offered for sale and sold by Ziebart and all services of a similar nature to those offered by Ziebart or its licensees, with the Ziebart®, TidyCar® or any of Plaintiffs' other trademarks or logos, or any word or words confusingly similar to them at Defendants' business located at 635 Franklin Ave., NE, St. Cloud, MN 56304, or any other place of business owned and/or operated by any of the Defendants, without an express written license from Ziebart.

(2) That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them be required to transfer to Ziebart forthwith the Ziebart®-advertised telephone numbers namely: (320) 255-1156, (320) 281-4340, (320) 257-0020 and facsimile number (320) 259-9348.

(3) That all tools, technical, marketing and other manuals, copyrighted materials, sign faces, advertising and promotional materials and any other items bearing any licensed trade name, trademark or logo, BART software and other materials of a confidential, proprietary and/or trade secret nature in the possession, custody, or control of Defendants, their agents, servants, employees, representatives and all those persons who act in concert or participation with them, and each and all of them, which might, if used, violate the injunction herein requested, be immediately returned to Ziebart, at Defendants' expense

19

per Section 14 of the License Agreement, and that Defendants pay Ziebart's attorney's fees and other costs and expenses as authorized by Section 14 of the License Agreement.

(4)    That Defendants, their agents, servants, employees, representatives, successors and all those persons who act in concert or participation with them, and each and all of them be enjoined for a period of 2 years and for a radius of 5 miles around the Licensed Location from operating a vehicle care business pursuant to Section 14 of the License Agreement.

(5)    That Defendants, their agents, servants, licensees, employees and representatives, and all those persons who act in concert or participation with them, and each and all of them be required to account to Plaintiffs for all gains and profits Defendants have derived and continue to derive by the aforementioned acts of unfair competition as alleged herein, trebled pursuant to 15 U.S.C. §1117 and common law.

(6)    That, pursuant to 15 U.S.C. §1116, Defendants be directed to file with the Court and serve on Plaintiffs' counsel within thirty (30) days after service of such injunction upon Defendants a report in writing setting forth in detail the manner and form which Defendants have complied with said injunction.

B.    The Court award the following relief and money damages for unfair competition:

(1)    That Defendants be required to pay damages, trebled, as allowed by federal trademark law, to Plaintiffs in consequence of Defendants willful and deliberate acts of trademark unfair competition.

(2)    That Defendants be required to pay to Plaintiffs damages in consequence of Defendants'

20

acts of unfair competition that have and will continue to cause injury to Plaintiffs'

goodwill and reputation and Ziebart's lost sales.

C.      That this Court render its declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, and

Rule 57 of the Federal Rules of Civil Procedure that the License Agreement, including Addenda are

terminated, that Defendants have no further rights under them, and that Ziebart may exercise all

rights granted to it by the License Agreement upon termination.

D.      That Plaintiffs be granted statutory interest on their damages as provided by law.

E.      That Plaintiffs be granted all other just, proper and equitable relief as this Court may

determine.

F.      That Plaintiffs be awarded their reasonable attorneys' fees, costs of this action and expenses

in connection herewith pursuant to 15 U.S.C. §1117 and Section 14 of the License Agreement.


**COUNT IV**

**DEFENDANT CORPORATION'S**
**BREACHES OF THE LICENSE AGREEMENT**
**FOR ILLEGAL USE OF PLAINTIFFS' AND OTHERS' LICENSED TRADEMARKS,**
**VIOLATION OF NON-COMPETION AGREEMENT**
**AND VIOLATION OF ITS CONFIDENTIALITY OBLIGATIONS**

64.     Ziebart incorporates by reference the allegations in paragraphs 1-63 as though fully

set forth herein.

65.     Defendant Corporation has an obligation not to use Plaintiffs' trademarks, including

but not limited to the Ziebart® and TidyCar® trademarks, pursuant to Section 17.A of the License

Agreement.

66.    Defendant Corporation has an obligation not to use the Speedy Auto Glass and Rhino Linings trademarks and logos, because Defendant Corporation's authorization to use these trademarks and logos terminated when the License Agreement terminated on August 31, 2011 pursuant to the Speedy Addenda, Section 13.A and Rhino Linings Addenda, Section 9.A.

67.    Defendant Corporation has an obligation not to disclose Ziebart's trade secrets and confidential information, and not to compete against Ziebart for a period of 2 years within a radius of 5 miles of the Licensed Location pursuant to Sections 14 and 17 of the License Agreement.

68.    In line with Section 17. B of the License Agreement, termination of the License Agreement does not lessen Defendant Corporation's obligation to be financially responsible for the warranties it issued to its Ziebart customers during the time period Defendant Corporation was an authorized Ziebart licensee.

69.    Upon information and belief, Defendant Corporation has not maintained the confidentiality of Ziebart's trade secrets and confidential information, as evidenced by the fact that Defendants are continuing to operate the same business as they operated as a Ziebart licensee at their former Licensed Location, continuing to use Plaintiffs' Ziebart and TidyCar trademarks and the Speedy Auto Glass and Rhino Linings trademarks to promote their unauthorized vehicle care business.

70.    Pursuant to Section 14 and 17 of the License Agreement, Defendant Corporation, and Defendant Waggoner, as Defendant Corporation's principal, have a legal obligation not to

compete against Ziebart for a period of two years following termination within a 5 mile radius of the former Licensed Location.

71. Defendants' breaches of the License Agreement and Addenda attached to it as described above have caused Ziebart to suffer irreparable injury.

72. Defendants' breaches of the License Agreement and Addenda attached to it as described above have caused Ziebart to suffer substantial monetary injury, which cannot be fully calculated.

73. Ziebart has been and will continue to be damaged by Defendants' actions, including damages of lost royalties, advertising fees, late fees and other fees, loss of business reputation and expenses and costs, including attorney's fees.

WHEREFORE, Ziebart requests:

A. That this Court grant the following equitable relief:

(1) That Defendants, their agents, servants, licensees, employees and representatives, and all those persons who act in concert or participation with them, and each and all of them, be preliminarily and permanently enjoined from using in the advertising, offering for sale and sale of vehicle care services and products offered by Ziebart and all services and products of a similar nature to those offered by Ziebart, with the designation Ziebart®, TidyCar®, Speedy Auto Glass and/or Rhino Linings or any other of Plaintiffs' trademarks or words or marks confusingly similar to said trademarks at 635 Franklin Ave., NE, St. Cloud, MN 56304 and any other place of business owned and/or operated by any of the Defendants,

23

without an express written license from Plaintiff.

(2)    That Defendants be required to transfer to Ziebart forthwith the Ziebart®-advertised telephone numbers namely: (320) 255-1156, (320) 281-4340, (320) 257-0020 and facsimile number (320) 259-9348.

(3)    That Defendants and all those persons who act in concert or participation with them be enjoined from operating a vehicle care service business or similar business for a period of two (2) years within a 5 mile radius of the former Licensed Location.

(4)    That in line with Section 17.B of the License Agreement, Defendant Corporation make business arrangements, at Defendants' expense, to have the warranties issued by Defendant Corporation to its customers during the time Defendant Corporation was an authorized Ziebart licensee properly and fully serviced by an authorized Ziebart Licensee, for the benefit of said customers.

(5)    That Defendants be required to account to Ziebart for all gains and profits Defendants have derived and continue to derive by Defendants' aforementioned breaches of contract.

(6)    That all tools, technical, marketing and other manuals, copyrighted materials, sign faces, advertising and promotional materials and any other items bearing any Ziebart-licensed trade name, trademark or logo, BART software and other materials of a confidential, proprietary and/or trade secret nature in the possession, custody, or control of Defendants, their agents, servants, licensees, employees and representatives, and all those persons who act in concert or participation with them, and each and all of them, which might, if used,

24

violate the injunction herein requested, be returned to Ziebart, at Defendants' expense, as the Court directs.

B.    The Court award money damages equal to:

(1)    all outstanding amounts due Ziebart under the terms of the License Agreement, including unpaid royalties, advertising fees, late fees, other fees, if any, and lost profits arising from Defendants' breaches of contract, including but not limited to, those profits and other damages suffered as a result of Defendants' violations of its confidentiality and non-competition covenants.

(2)    all damages incurred by Ziebart in consequence of Defendants' aforementioned acts that cause injury to Ziebart's goodwill and reputation.

C.    That Ziebart be awarded its attorney's fees pursuant to Sec. 14 of the License Agreement.

D.    That Ziebart be granted all other just and proper relief as this Court may determine.

ZIEBART INTERNATIONAL CORPORATION,
a Michigan corporation

By: _____
      William R. Patterson, Vice President and Treasurer

ZIEBART CORPORATION,
a Michigan corporation

By: _____
      William R. Patterson, Vice President and Asst. Secretary

25

STATE OF MICHIGAN      )
                       )
COUNTY OF OAKLAND )

On this 1st day of May, 2012 before me, a Notary Public in and for said County, appeared William R. Patterson who states that he is Vice President and Treasurer of ZIEBART INTERNATIONAL CORPORATION and Vice President and Assistant Secretary of ZIEBART CORPORATION, Plaintiffs herein; that he has read the foregoing Verified Complaint by him subscribed; and, that he knows the contents thereof and that the same is true to the best of his knowledge and belief; that he is authorized to execute said Verified Complaint for and on behalf of said corporations and if called upon he could testify to the foregoing.

_____
Notary Public
Oakland County, Michigan
My Commission expires: 3/2/2013

PATRICIA S LIPSKY
Notary Public - Michigan
Oakland County
My Commission Expires Mar 2, 2013
Acting in the County of Oakland

May, Simpson & Strote, P.C.

By: s/Steven M. Raymond
Steven M. Raymond (P31999)
100 W. Long Lake Rd.
Suite 200
Bloomfield Hills, MI 48304
(248) 646-9500
sraymond@msspc.com
Attorneys for Plaintiffs

Dated: May 1, 2012

26